1  Douglas M. Butz, Esq. (SBN 060722)
   dmbutz@butzdunn.com
2  Jocelyn D. Hannah, Esq. (SBN 224666)
   jhannah@butzdunn.com
3  David D. Cardone, Esq. (SBN 254954)
   dcardone@butzdunn.com
4  BUTZ DUNN & DESANTIS
   A PROFESSIONAL CORPORATION
5  Attorneys At Law
6  101 West Broadway, Suite 1700
   San Diego, California 92101-8289
7  (619) 233-4777 / Facsimile (619) 231-0341
   and
8  BARRY L. COHEN, ESQ.
   bcohen@thorpreed.com
9  JERRI A. RYAN, ESQ. (SBN 201814)
   jryan@thorpreed.com
10 THORP REED & ARMSTRONG, LLP
11 2005 Market Street, Suite 1910
   Philadelphia, Pennsylvania 19103
12 Telephone: (215) 640-8500
   Facsimile : (215) 640-8501
13
14 Attorneys for Plaintiff,
   United States Golf Association, Inc.
15

**SEALED FILED** JUN 0 5 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ____ DEPUTY

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

'08 CV 0981 JM JMA

| | |
|---|---|
| UNITED STATES GOLF ASSOCIATION, INC.,<br>  Plaintiff,<br>vs.<br>VARIOUS JOHN and JANE DOES Individuals<br>and<br>VARIOUS XYZ ENTITIES,<br>  Defendants. | CASE NO. _____<br><br>BRIEF IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER FOR SEIZURE OF INFRINGING GOODS AND FOR PRELIMINARY INJUNCTION |

BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TRO

## TABLE OF CONTENTS

Page

I. STATEMENT OF THE CASE ................................................................................. 1

    A. Plaintiff United States Golf Association ..................................................... 1

    B. Defendants and the Conduct Giving Rise to This Action ............................ 2

II. A TEMPORARY RESTRAINING ORDER AND AN ORDER FOR SEIZURE OF THE INFRINGING COUNTERFEIT GOODS SHOULD BE GRANTED ............... 3

    A. Standard for Granting a Temporary Restraining Order ............................... 3

    B. Plaintiff Has a Strong Likelihood of Success on the Merits of Its Lanham Act Claims .................................................................................................... 3

        1. Plaintiff Owns Valid and Protectable Marks ................................... 5

        2. Defendants' Use Of Plaintiff's Marks Creates a Likelihood Of Confusion ........................................................................................ 5

            a. There is a likelihood of confusion under the triggering mechanism analysis ............................................................. 5

            b. There is a likelihood of confusion using traditional confusion analysis ............................................................... 7

    C. Plaintiff Will Suffer Irreparable Injury If the Court Does Not Grant the TRO .............................................................................................................. 9

    D. Plaintiff Has Compelling Reasons for Not Notifying Defendants of the Instant Motion ............................................................................................. 10

        1. Rule 65(b) of the Federal Rules of Civil Procedure ..................... 10

        2. Notice is Impracticable .................................................................. 11

        3. The Damage to Plaintiff and the Public if the Restraining Order Is Not Issued Would Be Far Greater Than the Harm to Defendants If the Order Is Issued ........................................................................ 12

    E. An *Ex Parte* Order Is Appropriate in This Case ......................................... 13

III. CONCLUSION ........................................................................................................ 14

BUTZ DUNN DESANTIS
A PROFESSIONAL CORPORATION
101 WEST BROADWAY, SUITE 1700
SAN DIEGO, CALIFORNIA 92101
(619) 233-4777

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979) ..................................... 7, 8

Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc., 457 F.3d 1062 (9th Cir. 2006). .............................................................................................................................. 8

Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746 (8th Cir. 1980) ........... 10

Boston Athletic Ass'n v. Sullivan, 867 F.2d 22 (1st Cir. 1989) .................................. 6, 7

Boston Prof. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004 (5th Cir. 1975) ..................................................................................................... 6

Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1053 (9th Cir. 1993) ........................................................................................................ 4

E&J Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280 (9th Cir. 1992) ..................... 8, 9

Eclipse Assocs. Ltd. v. Data Gen. Corp., 894 F.2d 1114 (9th Cir. 1990) ....................... 9

Fimab-Finanziaria Maglificio v. Kitchen, 548 F. Supp. 248 (S.D. Fla. 1982) ......... 11, 12

Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466 (3d Cir. 1994) ................. 8

Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149 (9th Cir. 1963) .............................................................................................................................. 7

Frisch's Restaurants. Inc. v. Elby's Big Boy Inc., 670 F.2d 642 (6th Cir. 1982) ............ 3

Gamecaster, Inc. v. Direct, Inc., (2006 U.S. Dist Lexis 92045) ..................................... 3

Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423 (1974) .................................... 11

Helene Curtis Indus., Inc. v. Church & Dwight Co., 560 F.2d 1325 (7th Cir. 1977) ............................................................................................................................ 10

Home Box Office, Inc v. Showtime/The Movie Channel, Inc., 832 F.2d 1311 (2d Cir. 1987) ....................................................................................................................... 10

Hunting World Inc v Reboans Inc., 24 U.S.P.Q. 2d 1844, (N.D. Cal. 1992) .................. 3

KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596 (9th Cir. 2005) ......................................................................................................................... 4

Larsen v. Terk Techs. Corp., 151 F.3d 140 (4th Cir. 1998) ........................................... 8

BUTZ DUNN DESANTIS
A PROFESSIONAL CORPORATION
101 WEST BROADWAY, SUITE 1700
SAN DIEGO, CALIFORNIA 92101
(619) 233-4777

ii

BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TRO

| | |
|---|---|
| Lone Star Steakhouse, 43 F.3d 922 | 10 |
| Louisiana World Expo v. Logue, 746 F.2d 1033 (5th Cir. 1984) | 6, 9 |
| Matter of Vuitton, 606 F.2d 1 (2d Cir. 1979) | 3, 11, 12 |
| Metro Pub. Ltd v. San Jose Mercury News, 987 F.2d 637 (9th Cir. 1993) | 9 |
| Mobil Oil Corp. v. Pegasus Petro. Corp., 818 F.2d 254 (2d Cir. 1987) | 10 |
| National Football League Properties Inc. v. Doe, 28 U.S.P.Q.2d 1866 (Cal. Super. 1993) | 11 |
| National Football League Properties, Inc. v. New Jersey Giants, Inc., 637 F. Supp. 507 (D.N.J. 1986) | 9 |
| National Football League Properties, Inc. v. Wichita Falls Sportswear, Inc., 532 F. Supp. 651 (W.D. Wash. 1982) | 6 |
| National Football League Properties, Inc. v. Yingling, 224 U.S.P.Q. 848 (Fla. Cir. Ct. 1984) | 6, 11 |
| National Football League, 28 U.S.P.Q.2d at 1867 | 12 |
| National Lead Co. v. Wolfe, 223 F.2d 195 (9th Cir. 1955) | 9 |
| NEA Enterprises Inc. v. Zack's, 209 U.S.P.Q. (S.D. Fla. 1980) | 11 |
| NEA Enterprises, Inc. v. American Horse Enterprises, Inc., 211 U.S.P.Q. 109 (N.D. Cal. 1980) | 3 |
| Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190 (2d Cir. 1971) | 11 |
| Park' N' Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189 (1985) | 5 |
| Peaches Entertainment Corp. v. Entertainment Repertoire Assocs., Inc., 62 F.3d 690 (5th Cir. 1995) | 4 |
| Pepe Ltd. v. Ocean View Factory Outlet Corp., 21 U.S.P.Q.2d 1509 (D.P.R. 1991) | 11 |
| Pizzeria Uno, 747 F.2d at 1522 (4th Cir. 1984) | 9 |
| Professional Golfer's Ass'n v. Bankers Life & Cas. Co., 514 F.2d 665 (5th Cir. 1975) | 10 |
| **Roe v. Anderson,** 134 F.3d 1400 (9th Cir. 1998) | 9 |
| Rolex Watch U S A. v. Canner, 645 F. Supp. 484 (S.D. Fla. 1986) | 8 |
| S&R Corp. v. Jiffy Lube Int'l., Inc., 968 F.2d 371 (3d Cir. 1992) | 10 |

BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TRO

Textile Unlimited, Inc. v. A.BMH and Co., 240 F.3d 781 (9th Cir.) ............................................ 3

Two Pesos, Inc. v. Taco Cabana Inc., 505 US. 763 (1992) ...................................................... 4

University of Georgia Athletic Ass'n v. Laite, 756 F.2d 1535 (11th Cir. 1985) ........................ 6

Vision Sports. Inc. v. Melville Corp., 888 F.2d 609 (9th Cir. 1989) ......................................... 10

Vuitton v. White, 945 F.2d 569 (3d Cir. 1991) .................................................................. 11, 13, 14

Warner Bros.. Inc. v. Gay Toys. Inc., 658 F.2d 76 (2d Cir. 1981) ............................................. 7

Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc., 698 F.2d 862 (7th Cir. 1983) .................................................................................................................... 10

WSM, Inc. v. Tennessee Sales Co., 709 F.2d 1084 (6th Cir. 1983) ........................................... 8

Wynn Oil Co. v. Thomas, 839 F.2d 1183 (6th Cir. 1988) ..................................................... 8, 9

Wynn Oil v. American Way Service Corp., 943 F.2d 595 (6th Cir. 1991) ............................... 10

Yale Electric Corp. v. Robertson, 26 F.2d 972 (2d Cir. 1928) ................................................. 10

BUTZ DUNN DESANTIS
A PROFESSIONAL CORPORATION
101 WEST BROADWAY, SUITE 1700
SAN DIEGO, CALIFORNIA 92101
(619) 233-4777

BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TRO

**Statutes**

15 U.S.C. § 1114(1)(a) ........................................................................................................4

15 U.S.C. § 1115(b) ............................................................................................................5

15 U.S.C. § 1116(d) ..........................................................................................................11

15 U.S.C. § 1125(a)(1) .......................................................................................................4

15 U.S.C. §1065 .............................................................................................................1, 5

28 U.S.C. § 1651 ..............................................................................................................11

**Other Authorities**

1 J. McCarthy, McCarthy on Trademarks & Unfair Competition, § 3:09 (4th ed. 2005) ..................................................................................................................................7

3 J. McCarthy, § 23.03[2] at 23-46) ...................................................................................8

3 J. McCarthy, § 23:21 .......................................................................................................9

5 J. McCarthy, McCarthy on Trademarks & Unfair Competition, § 30:34 (4th ed. 2005) ..................................................................................................................................3

5 McCarthy § 30:34 ..........................................................................................................12

5 McCarthy § 30:47 ..........................................................................................................10

**Rules**

Fed. R. Civ. P. 65(b) .........................................................................................................10

Fed. R. Civ. P. 65(b)(1) ....................................................................................................11

## I. STATEMENT OF THE CASE

### A. Plaintiff United States Golf Association

Since its formation in 1894, Plaintiff United States Golf Association, Inc. ("USGA" or "Plaintiff") has been the governing body of golf in the United States. (Verified Compl. ¶ 6.) For over one-hundred years, the USGA has conducted the United States Open Championship (hereinafter referred to as either the "Championship" or "OPEN") annually at various golf courses throughout the United States. (Id. ¶ 7.) A few examples of past locations of the United States Open Championship include Oakmont Country Club (Oakmont, PA), Winged Foot Golf Club (Mamaroneh, NY), No. 2 Course at Pinehurst Resort (Village of Pinehurst, NC), Pebble Beach Golf Links (Pebble Beach, CA), Merion Golf Club (Ardmore, PA), and Baltusrol Golf Club (Springfield, NJ). (Id. ¶ 10.) The USGA will conduct the 2008 OPEN from June 12 through June 15 (practice rounds from June 9-11, 2008) at the Torrey Pines South Golf Course ("Torrey Pines").[1] (Id. ¶ 12.) This course is consistently ranked among the top municipal golf courses in the United States. (Id. ¶ 12.) Torrey Pines hosts the Buick Golf Invitational every year. (Id.)

The USGA has referred continuously to its golf championship as the "OPEN," "UNITED STATES OPEN," "UNITED STATES OPEN CHAMPIONSHIP," "U.S. OPEN CHAMPIONSHIP," and "U.S. OPEN," (Id. ¶¶ 7, 8, 9), and has extensively advertised and promoted this year's Championship using these terms. (Id. ¶ 13.) In this regard, the USGA owns federal registrations for the marks UNITED STATES OPEN CHAMPIONSHIP, U.S. OPEN CHAMPIONSHIP, U.S. OPEN, UNITED STATES OPEN, and OPEN for entertainment services, namely, conducting golf tournaments. (Id. ¶ 9.) Each of these marks has achieved incontestable status under the Trademark Act, 15 U.S.C. § 1065. (Id.) The USGA also owns a federal registration for the mark U.S. OPEN for clothing and other goods which consist of memorabilia normally sold in connection with its famous golf tournament including, but not limited to, shirts, caps, hats, t-shirts, sweatshirts, and jackets. (Id.)

---

[1] If there is a tie for the lead after 72 holes of play, then an 18-hole playoff will be held on Monday, June 16, 2008 at Torrey Pines.

1
BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TRO

**B. Defendants and the Conduct Giving Rise to This Action**

In connection with the OPEN, and for many years, the USGA and the host course have sold merchandise bearing the marks of the USGA and the host club ("OPEN Merchandise"). (Id. ¶ 17.) In most instances, the OPEN Merchandise includes the year of the OPEN, a reference to the OPEN, and a reference to the location where the OPEN is being conducted. (Id.) In other instances, there is merely a reference to the host site and the year of the OPEN, which together reflect to consumers that the goods are memorabilia associated with the USGA's OPEN. (Id.) The USGA is currently selling and offering for sale 2008 OPEN Merchandise at Torrey Pines and through catalog and internet sales. Other than sales by the Plaintiff on-site at Torrey Pines, there is no authorized off-site sale of OPEN Merchandise within 100 miles of Torrey Pines. (Id. ¶ 18.) OPEN Merchandise, which includes items such as visors, hats, jackets, sweatshirts, shirts and t-shirts, is of the highest quality and grade. (Id.)

Defendants are bootleggers, vendors and peddlers who are expected to be selling imitation, and in many cases inferior, counterfeit 2008 OPEN Merchandise (hereinafter "Unauthorized Merchandise"). (Id. ¶¶ 2, 20, 21, 23.) The Unauthorized Merchandise includes, among others goods, visors, hats, t-shirts, and knit shirts, which bear or refer to the USGA Marks (as those terms are defined in the Verified Complaint). (Id.) The USGA has not authorized or approved the manufacture, distribution, or sale of the Unauthorized Merchandise. (Id. ¶ 19.)

Defendants' use of, or reference to, Plaintiff's Marks, or marks similar to Plaintiff's Marks, will deceive consumers into believing that they are purchasing genuine goods which have been manufactured, authorized, or approved by Plaintiff. (Id. ¶ 22.) The threat to Plaintiff's right to control the use of its Marks and the threat to its reputation for providing high quality goods is real and substantial. (Id. ¶ 22-25.) The loss of control by Plaintiff over its Marks and reputation constitutes irreparable injury, which is enhanced by the anticipated inferior quality of Defendants' Unauthorized Merchandise. (Id. ¶¶ 21, 29.)

Notice has not been provided to Defendants out of Plaintiff's reasonable concern that the Unauthorized Merchandise would be dispersed to third parties and/or simply vanish. (Id. ¶ 24.)

2
BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TRO

1  Plaintiff seeks an Order from this Court authorizing the U.S. Marshal and/or the local police
2  department and/or other government officers and/or any other person that the Court empowers
3  to immediately seize the Unauthorized Merchandise.

## II. A TEMPORARY RESTRAINING ORDER AND AN ORDER FOR SEIZURE OF THE INFRINGING COUNTERFEIT GOODS SHOULD BE GRANTED

### A. Standard for Granting a Temporary Restraining Order

When considering a request for an *ex parte* temporary restraining order ("TRO"), courts consider the following factors: (1) the likelihood that plaintiff will prevail on the merits of its claim; (2) the likelihood that plaintiff will suffer irreparable injury if the TRO is not granted; and (3) whether a valid reason exists for not giving defendant notice of plaintiff's motion for a TRO.[2] See Frisch's Restaurants. Inc. v. Elby's Big Boy Inc., 670 F.2d 642, 651 (6th Cir. 1982); Matter of Vuitton et fils S.A., 606 F.2d 1,4 (2d Cir. 1979); Hunting World Inc v Reboans Inc., 24 U.S.P.Q. 2d 1844, (N.D. Cal. 1992); NEA Enterprises, Inc. v. American Horse Enterprises, Inc., 211 U.S.P.Q. 109 (N.D. Cal. 1980); 5 J. McCarthy, McCarthy on Trademarks & Unfair Competition, § 30:34 (4th ed. 2005). As shown below, Plaintiff has demonstrated a substantial likelihood of success on the merits of its Lanham Act claims and irreparable injury if the TRO is denied. Furthermore, compelling reasons exist why Plaintiff has not notified Defendants of the instant *ex parte* motion.

### B. Plaintiff Has a Strong Likelihood of Success on the Merits of Its Lanham Act Claims

In its Verified Complaint, Plaintiff asserts claims for false designation of origin, trademark infringement, and trafficking in counterfeit goods under Sections 32 and 43(a) of the Federal Trademark Act (the "Lanham Act"). The Lanham Act was enacted to protect the public against confusion with respect to the quality and source of goods and to protect businesses'

---

[2] The same standards govern the issuance of both TROs and preliminary injunctions. See Gamecaster, Inc. v. Direct, Inc., (2006 U.S. Dist Lexis 92045). A TRO is a form of a preliminary injunction, which is a device for preserving the *status quo* and preventing the irreparable loss of rights before a judgment. Textile Unlimited, Inc. v. A.BMH and Co., 240 F.3d 781, 786 (9th Cir.).

BUTZ DUNN DESANTIS
A PROFESSIONAL CORPORATION
101 WEST BROADWAY, SUITE 1700
SAN DIEGO, CALIFORNIA 92101
(619) 233-4777

goodwill in their products. <u>Peaches Entertainment Corp. v. Entertainment Repertoire Assocs., Inc.</u>, 62 F.3d 690, 692 (5th Cir. 1995); accord <u>Two Pesos, Inc. v. Taco Cabana Inc.</u>, 505 U.S. 763, 782 (1992) (stating that the Lanham Act was enacted to protect a trademarks owner's "investment from misappropriation by pirates and cheats").

The broad remedial purpose of the Lanham Act is reflected in Sections 32 and 43(a). Section 32 provides:

> Any person who shall, without the consent of the registrant, use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a). Section 43(a) provides:

> Any person who, on or in connection with any goods. . . uses in commerce any word, term, name, symbol, or device, or combination thereof; or any false designation of origin. . . which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods. . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

To prevail on its Section 32 or 43(a) claims, Plaintiff must prove (1) that it owns valid and protectable marks, and (2) that Defendants' use of marks that are identical or similar to Plaintiff's marks creates a likelihood of confusion. See <u>Brookfield Communications, Inc. v. West Coast Entm't Corp.</u>, 174 F.3d 1036, 1053 (9th Cir. 1993); <u>KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.</u>, 408 F.3d 596, 602 (9th Cir. 2005).

It cannot be disputed that Plaintiff owns valid and protectable marks. Moreover, Plaintiff will be able to show a likelihood of confusion because Defendants use or make reference to marks that are identical (or nearly identical) to Plaintiff's Marks on the competing Unauthorized Merchandise.

///

4

BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TRO

### 1. Plaintiff Owns Valid and Protectable Marks

There is no question that Plaintiff owns valid and protectable marks. The USGA owns federal registrations for "UNITED STATES OPEN CHAMPIONSHIP," "U.S. OPEN CHAMPIONSHIP," "U.S. OPEN," "UNITED STATES OPEN," and "OPEN" for golfing services, conducting golf tournaments, clothing, hats, bags, and a variety of other goods. (Verified Compl. ¶¶ 8, 9, 15.) These registrations constitute:

> *prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark and of the registrant's <u>exclusive</u> right to use the registered mark in commerce or in connection with the goods or services in the registration.

15 U.S.C. § 1115(b) (emphasis added); See also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 196 (1985) (citations omitted).

The presumption that Plaintiff's Marks are valid and that Plaintiff has the exclusive right to use its Marks cannot be overcome in this case. Plaintiff's Marks are truly internationally famous, and Plaintiff has spent millions of dollars promoting them throughout the United States and the world. In addition, Plaintiff need not prove that it owns valid and protectable marks when such marks are incontestable pursuant to 15 U.S.C. § 1065. 15 U.S.C. § 1115(b). See also, Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., supra, 105 U.S. 189.

As shown below, there is a strong likelihood of confusion in this case based on two separate theories, and thus Plaintiff has a strong likelihood of success on the merits of its claims.

### 2. Defendants' Use Of Plaintiff's Marks Creates a Likelihood Of Confusion

#### a. There is a likelihood of confusion under the triggering mechanism analysis

First, it is common practice for owners of well-known sporting events to license their marks for use on merchandise and related memorabilia. (Verified Compl. ¶ 27.) By using marks that are identical or confusingly similar to Plaintiff's marks on their Unauthorized Merchandise (which competes with Plaintiff's OPEN Merchandise), Defendants have attempted to capitalize on the goodwill associated with the USGA's OPEN and Torrey Pines's famous

golf course. Such unauthorized use of a mark, which refers to a well-known event or forum for the event, creates a presumption of a likelihood of confusion. See e.g., <u>Boston Athletic Ass'n v. Sullivan</u>, 867 F.2d 22, 34 (1st Cir. 1989) (affirming summary judgment against vendors who made reference to the Boston Marathon on clothing even though vendors did not use exact name of the race); <u>Louisiana World Expo v. Logue</u>, 746 F.2d 1033, 1041 (5th Cir. 1984) ("[defendant] admitted, however, that his intention was to earn income by identifying his product with the worldwide exposition put on by the Plaintiff. That fact alone may be sufficient to justify the inference that there is. . . [a likelihood of confusion]") (affirming grant of TRO and permanent injunction); <u>National Football League Properties, Inc. v. Yingling</u>, 224 U.S.P.Q. 848, 850-51 (Fla. Cir. Ct. 1984) (affirming order granting *ex parte* TRO against vendors who sold clothing referring to the Super Bowl); <u>Boston Prof. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.</u>, 510 F.2d 1004, 1012-13 (5th Cir. 1975) (holding that defendant's use of similar mark on sporting goods violated Section 43(a) of the Trademark Act); <u>National Football League Properties, Inc. v. Wichita Falls Sportswear, Inc.</u>, 532 F. Supp. 651, 659 (W.D. Wash. 1982) (holding that confusion as to sponsorship of sporting goods is actionable); See also <u>University of Georgia Athletic Ass'n v. Laite</u>, 756 F.2d 1535, 1546 (11th Cir. 1985) (holding a Lanham Act violation occurs where the trademark acts as the "triggering mechanism" for the sale of the product).

<u>Boston Athletic</u> is instructive here. In <u>Boston Athletic</u>, the plaintiff was a charitable organization that had conducted the Boston marathon since 1897. <u>Boston Athletic, supra</u>, 867 F.2d at 24. The plaintiff owned the federal service mark for "Boston Marathon." (<u>Id</u>. at 24-25.) The marathon started in Hopkinton, Massachusetts and ended in Boston. The defendants sold clothing imprinted with "1986 Marathon, [Picture of runners], Hopkinton-Boston," in direct competition with plaintiff's authorized clothing. (<u>Id</u>.) The plaintiff sued for infringement, contending that defendants' reference to the plaintiff's famous sporting event violated the Lanham Act.

In reversing the district court's award of summary judgment in favor of the defendant and awarding summary judgment in favor of the plaintiff, the First Circuit held that "the

6
BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TRO

likelihood of confusion inquiry focuses upon whether the purchasing public is likely to believe that the sponsor of the Boston Marathon produces, licenses, or otherwise endorses defendants' shirts." (Id. at 28-29.) The court noted that "the language and the design on defendants' shirts <u>intentionally calls attention to an event that has long been sponsored and supported by the [plaintiff]</u>—an event that is, in fact, the subject of its registered mark." (Id. at 33 (emphasis added).) The court concluded that even though defendants did not expressly use plaintiff's "Boston Marathon" marks, "given the undisputed facts that (1) defendants <u>intentionally [indirectly] referred to the Boston marathon</u> on its shirts, and (2) purchasers were <u>likely to buy the shirts precisely because of that reference</u>, we think it is fair to presume that purchasers are likely to be confused about the shirt's source or sponsorship." (Id. at 34 (emphasis added).) Because the presumption had not been rebutted, the First Circuit held that the plaintiff was entitled to an injunction as a matter of law. (Id.)

The same is true here. Defendants are selling, or will sell, merchandise which either bears Plaintiff's identical marks or which makes reference to Plaintiff's marks. Such sales create a presumption of confusion which cannot be rebutted.[3]

    b.    **There is a likelihood of confusion using traditional confusion analysis**

The Ninth Circuit weighs eight factors in determining whether a likelihood of confusion exists. <u>AMF, Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348-349 (9th Cir. 1979) (abrogated in part on other grounds in <u>Mattel, Inc. v. Walking Mountain Productions</u>, 353 F.3d 792, 810 n. 19 (9th Cir. 2003). These factors are (1) the strength of the owner's mark; (2) the proximity or relatedness of the goods; (3) the similarity of the mark; (4) the evidence of actual confusion; (5) the marketing channels; (6) the degree of care consumers are likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion into

---

[3] The law is well-settled that trademark infringement occurs where a confusingly similar mark is used on a competing good even if consumers do not know or care about the name of the manufacturer of the genuine good. See e.g., <u>Fleischmann Distilling Corp. v. Maier Brewing Co.</u>, 314 F.2d 149, 155 (9th Cir. 1963); <u>Boston Athletic Ass'n</u>, 867 F.2d at 32; <u>Warner Bros. Inc. v. Gay Toys, Inc.</u>, 658 F.2d 76 (2d Cir. 1981), aff'd., 724 F.2d 327 (2d Cir. 1983); 1 J. McCarthy, <u>McCarthy on Trademarks & Unfair Competition</u>, § 3:09 (4th ed. 2005).

other markets. <u>AMF, Inc., supra,</u> 599 F.2d at 348-349. However, "the marks need not be identical and proof of actual confusion is not necessary to establish a likelihood of confusion." <u>Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,</u> 30 F.3d 466, 477 (3d Cir. 1994). "The failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." <u>Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,</u> 457 F.3d 1062, 1077 (9th Cir. 2006).

The law is well-settled that where the parties are using identical (or closely similar) marks on directly competitive goods, those facts are a sufficient basis on which to find trademark infringement. <u>See, e.g.,</u> <u>Larsen v. Terk Techs. Corp.,</u> 151 F.3d 140, 148 (4th Cir. 1998). As one court has held in this regard: "[s]uch cases are open and shut and do not involve protracted litigation to determine liability for trademark infringement." <u>Wynn Oil Co. v. Thomas,</u> 839 F.2d 1183, 1191 (6th Cir. 1988) (quoting 3 J. McCarthy, § 23.03[2] at 23-46)); <u>see e.g., WSM, Inc. v. Tennessee Sales Co.,</u> 709 F.2d 1084, 1086 (6th Cir. 1983) (granting summary judgment to plaintiff where defendant used identical federal mark on identical goods); <u>Rolex Watch U S A. v. Canner,</u> 645 F. Supp. 484, 496 (S.D. Fla. 1986) (granting a TRO, seizure order, and summary judgment to plaintiff where defendant used identical mark on identical goods). Because the instant Defendants are using, or will use, marks that are identical or closely similar to Plaintiff's internationally famous Marks on directly competing products, the instant case is similarly "open and shut."

Moreover, the law is well-settled that where a defendant uses a mark that is similar to plaintiff's mark in an attempt to trade off plaintiff's goodwill, a presumption of confusion arises. <u>See, e.g., Larsen v. Terk Techs. Corp.,</u> 151 F.3d 140, 148 (4th Cir. 1998); <u>E&J Gallo Winery v. Gallo Cattle Co.,</u> 967 F.2d 1280, 1293 (9th Cir. 1992). That presumption cannot be rebutted here because Defendants' use of and references to Plaintiff's Marks on their competing Unauthorized Merchandise is clear evidence that Defendants seek to trade on Plaintiff's well-

8
BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TRO

known marks and to confuse the public into believing that Defendants' Unauthorized Merchandise is genuine OPEN Merchandise. See Id.[4]

### C. Plaintiff Will Suffer Irreparable Injury If the Court Does Not Grant the TRO

Defendants engage in counterfeiting in order to earn a profit by associating themselves with Plaintiff's fame, goodwill, and reputation. Defendants' conduct is detrimental to the public and to Plaintiff for at least two reasons. First, some members of the public will likely be misled into thinking that Defendants' Unauthorized Merchandise was created or manufactured by Plaintiff. See, e.g., Louisiana World Expo., Inc. v. Logue, 746 F.2d 1033, 1037, 1041 (5th Cir. 1984) (affirming issuance of TRO and permanent injunction where a likelihood that consumers would purchase defendant's counterfeit WORLD'S FAIR t-shirts thinking that they were genuine WORLD FAIR merchandise created by plaintiff/owner of the WORLD'S FAIR marks); National Lead Co. v. Wolfe, 223 F.2d 195, 201 (9th Cir. 1955) (reversing judgment for defendant and entering judgment for plaintiff where consumers were misled into thinking that defendant's paints were actually plaintiff's paints). Second, other members of the public will likely be misled into thinking that Defendants' Unauthorized Merchandise was sponsored, endorsed or approved by Plaintiff. See, e.g., Metro Pub. Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993)(abrogation in part on other grounds recognized in Roe v. Anderson, 134 F.3d 1400, 1402 (9th Cir. 1998)); Eclipse Assocs. Ltd. v. Data Gen. Corp., 894 F.2d 1114, 1118 (9th Cir. 1990); Wynn Oil Co. v. Thomas, 839 F.2d 1183, 1186 (6th Cir. 1988) ("[T]he general concept underlying likelihood of confusion is that the public believe that the mark's owner sponsored or otherwise approved of the use of the trademark.").

In trademark infringement actions, courts generally presume irreparable injury once the plaintiff shows a likelihood of confusion. Brookfield, supra at 174 F.3d at 1045; ; S&R Corp. v.

---

[4] Complete identicality between the parties' marks is not required to prove a likelihood of confusion. Rather, the plaintiff may show that there is similarity as to the sight, the sound, or the meaning of the marks. E.g., Pizzeria Uno, 747 F.2d at 1522, 1530 (4th Cir. 1984), 3 J. McCarthy, § 23:21; see also National Football League Properties, Inc. v. New Jersey Giants, Inc., 637 F. Supp. 507, 516-19 (D.N.J. 1986) (holding that use of the word "Giants" on clothing sold near the football stadium was sufficient to cause confusion).

---

9
BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TRO

Jiffy Lube Int'l., Inc., 968 F.2d 371, 378 (3d Cir. 1992); Lone Star Steakhouse, 43 F.3d 922 at 939-40 (finding irreparable injury as a matter of law); Vision Sports. Inc. v. Melville Corp., 888 F.2d 609, 612 n.3 (9th Cir. 1989); Wynn Oil v. American Way Service Corp., 943 F.2d 595, 608 (6th Cir. 1991); Home Box Office, Inc. v. Showtime/The Movie Channel, Inc., 832 F.2d 1311, 1314 (2d Cir. 1987); Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 753 (8th Cir. 1980); Helene Curtis Indus., Inc. v. Church & Dwight Co., 560 F.2d 1325, 1332-33 (7th Cir. 1977); 5 McCarthy § 30:47.

Although Defendants' Unauthorized Merchandise is expected to be of inferior quality contributes to the irreparable injury in this case, because the Lanham Act seeks to protect trademark owners' reputations and goodwill and the public from deception, Plaintiff will suffer an irreparable injury *even if* the Unauthorized Merchandise is of equal or superior quality to the OPEN Merchandise. Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 196 (3d Cir. 1990); Mobil Oil Corp., 818 F.2d at 259-60 ("a senior user may sue to protect his reputation even where the infringer's goods are of top quality."); Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc., 698 F.2d 862, 867 (7th Cir. 1983) ("Even if the infringer's goods are of high quality, the victim has the right to insist that its reputation not be imperiled by another's actions."); Professional Golfer's Ass'n v. Bankers Life & Cas. Co., 514 F.2d 665, 671 (5th Cir. 1975) ("For a reputation, like a face, is the symbol of its possessor and creator and another can use it only as a mask. The quality of a trademark owner's reputation should lie within his own control.") (quoting Judge Learned Hand's oft-cited opinion in Yale Electric Corp. v. Robertson, 26 F.2d 972, 974 (2d Cir. 1928)).

D. **Plaintiff Has Compelling Reasons for Not Notifying Defendants of the Instant Motion**

1. **Rule 65(b) of the Federal Rules of Civil Procedure**

Rule 65(b) of the Federal Rules of Civil Procedure provides that a temporary restraining order may be granted without notice to the adverse party or his attorney, if it appears from the facts shown by affidavit that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and if the

applicant's attorney certifies to the court in writing the reasons supporting the claim that notice should not be required. Plaintiff has complied with this rule. The verified complaint in this action, the *ex parte* motion for temporary restraining order, order for seizure of infringing goods and for preliminary injunction, and the affidavits in support thereof, state facts which show that immediate and irreparable injury, loss or damage will result to Plaintiff if Defendants are given notice of these proceedings prior to issuance of the order sought.

In a trademark infringement case, a substantial likelihood of confusion constitutes irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1). See Matter of Vuitton et Fils S.A., 606 F.2d 1 (2d Cir. 1979); Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190 (2d Cir. 1971); NEA Enterprises Inc. v. Zack's, 209 U.S.P.Q. 566 (S.D. Fla. 1980).

In such cases, the prior notice provisions of Rule 65 are inappropriate, given the extenuating need for immediate relief. See Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 439 (1974) ("Ex parte temporary restraining orders are no doubt necessary in certain circumstances...").

The "weight of authority around the country appears to favor the granting of *ex parte* seizure orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article."[5] Fimab-Finanziaria Maglificio v. Kitchen, 548 F. Supp. 248, 249 (S.D. Fla. 1982).

## 2. Notice is Impracticable

First, notice is impracticable because Plaintiff does not know the identity of Defendants. See, e.g., National Football League Properties Inc. v. Doe, 28 U.S.P.Q.2d 1866, 1867 (Cal. Super. 1993) (granting *ex parte* TRO); National Football League, 224 U.S.P.Q. at 851 (accord

---

[5] *Ex parte* seizure of counterfeit goods is a remedy provided by statute, 28 U.S.C. §1651 and by the inherent power of 15 U.S.C. § 1116(d), Vuitton v. White, 945 F.2d 569, 576 (3d Cir. 1991); Pepe Ltd. v. Ocean View Factory Outlet Corp., 21 U.S.P.Q.2d 1509, 1513 (D.P.R. 1991). The requirements of 15 U.S.C. § 1116(d) have been met. See Motion ¶ 9. Once the required showing is made, the seizure order is to issue. Indeed, it is an abuse of discretion for a district court not to issue a seizure order when an applicant has complied with the statute and met appropriate standards of proof in making the required factual showing. Vuitton, 945 F.2d at 576.

---

11
BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TRO

Vuitton, 606 F.2d at 2, 4-5). Second, even if Plaintiff did know the identity of Defendants, notice would be detrimental to the interest of Plaintiff and the public because it would allow Defendants to transfer or conceal the Unauthorized Merchandise. National Football League, 28 U.S.P.Q.2d at 1867 (stating that giving defendants notice would "cause said counterfeit [Super Bowl] merchandise to be diverted, removed from the confines of Los Angeles County, or sold to innocent third parties, . . . or otherwise disposed of in a manner that would otherwise render ineffective the Temporary Restraining Order"); Vuitton, 606 F.2d at 4-5 (reversing district court's refusal to issue *ex parte* TRO and noting that dumping of the counterfeit goods or transfers to unknown third parties is a common practice in the counterfeiting industry); Fimab-Finanziaria, 548 F. Supp. at 249 (granting *ex parte* TRO where plaintiff owned an unregistered mark); 5 McCarthy § 30:34.

The instant case is simply one in a long list of cases where bootleggers set up shop near a well-known sporting or entertainment event seeking to sell Unauthorized Merchandise. In these cases, courts consistently have granted *ex parte* TRO's against John and Jane Does and XYZ Entities, including the seizure of the Unauthorized Merchandise, because notice is not practicable and because these bootleggers are prone to disappear (along with the counterfeit goods) if notice is given. See 5 McCarthy § 30:34.

### 3. The Damage to Plaintiff and the Public if the Restraining Order Is Not Issued Would Be Far Greater Than the Harm to Defendants If the Order Is Issued

If Defendants are allowed to continue to sell counterfeit and imitations of Plaintiff's goods, this will result in even more confusion and deception to the public, damage to Plaintiff's business reputations, a loss of trade and a loss in tangible goodwill. The balance of hardships clearly favors Plaintiff and indicates that a temporary restraining order without notice should be issued. Defendants will have an immediate opportunity to be heard at a preliminary injunction hearing, which must be set shortly after the issuance of the temporary restraining order.

Defendants' business records are easily destroyed or secreted and, in view of the penalties—both civil and criminal—for trademark infringement, there is a considerable

motivation for Defendants to destroy evidence of the amount of their own sales and to protect the identity of their customers and suppliers. The Order requested is intended to preserve crucial evidence during the pendency of the action, prevent additional unauthorized merchandise from entering the stream of commerce, and preserve this Court's ability to provide an adequate final remedy.

Plaintiff's proposed ex parte Temporary Restraining Order is substantially identical to the ones entered by other U.S. District Courts in connection with complaints filed by the USGA and the golf courses hosting past U.S. Opens for unauthorized, counterfeit OPEN Merchandise. Copies of Orders of the Middle District of North Carolina, Northern District of Oklahoma, Northern District of California, Western District of Pennsylvania, and the District of New Jersey are attached as Exhibit "A" to Plaintiff's Motion.

E.  **An *Ex Parte* Order Is Appropriate in This Case**

Congress was acutely aware of bootleggers' methods of operation when it enacted the Trademark Counterfeiting Act amending the Lanham Act. 15 U.S.C. §1116. This act <u>expressly authorizes</u> the owner of a trademark or servicemark to obtain *ex parte* seizure orders in order to prevent sales of merchandise bearing counterfeits of the mark. <u>Id.</u>

The Third Circuit listed, in another Louis Vuitton case, <u>Vuitton v. White</u>, 945 F.2d 569 (3d Cir. 1991), various factors that must be present for the issuance of an *ex parte* seizure order to be appropriate. There, the court stated that the applicant must show that: (1) an order other than an *ex parte* seizure order is inadequate to address the trademark infringement; (2) the applicant has not publicized the required seizure; (3) the applicant is likely to succeed that the defendant used a counterfeit mark; (4) the applicant will suffer immediate and irreparable harm if the seizure is not ordered; (5) the goods to be seized are located at the place identified in the motion; (6) the harm to the applicant outweighs the potential harm to the defendant; and (7) the defendant would likely destroy, move or hide the goods if notice were given. <u>Id.</u> at 574. If the court finds all of these factors to be present, the court <u>must</u> issue an *ex parte* seizure order. <u>Id.</u> at 576.

13
BRIEF IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TRO

In the present motion, Plaintiff has shown all of the factors necessary for the issuance of an *ex parte* seizure order. Therefore, under the holding of <u>Vuitton v. White</u>, <u>supra</u>, the issuance of an *ex parte* seizure order is appropriate.

As described in the Verified Complaint and the related affidavits, Defendants who will be selling unauthorized OPEN Merchandise are bootleggers whose current whereabouts are unknown and who will vanish along with the Unauthorized Merchandise after the OPEN leaves Torrey Pines and thus an *ex parte* TRO and Order of Seizure are the only method of stopping such illegal activity.

### III. <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that a temporary restraining order and preliminary injunction issue against Defendants and that this Court give the proper enforcement officials the authority to seize the Unauthorized Merchandise.

Dated: 6/2/08

Respectfully submitted,

BUTZ DUNN & DeSANTIS, APC

DOUGLAS M. BUTZ, ESQ.
JOCELYN D. HANNAH, ESQ.
DAVID D. CARDONE, ESQ.
BUTZ, DUNN & DeSANTIS, APC.
101 West Broadway, Ste. 1700
San Diego, CA 92101
Telephone: (619) 233-4777
Facsimile: (619) 231-0341
Email: dmbutz@butzdunn.com
       jhannah@butzdunn.com
       dcardone@butzdunn.com

and

THORP REED & ARMSTRONG, LLP
BARRY L. COHEN, ESQ.
JERRI A. RYAN, ESQ.
2005 Market Street
One Commerce Square, Suite 1910
Philadelphia, PA 19103
Tel: (215) 640-8500
Fax: (215) 650-8501
Email: bcohen@thorpreed.com
       jryan@thorpreed.com
*Attorneys for Plaintiff,*
*United States Golf Association, Inc*